**Carpenter, Hazlewood, Delgado & Bolen, LLP**
Attorneys at Law
1400 E. Southern Avenue, Suite 400
Tempe, Arizona 85282
t 480.991.6949 | f 480.991.7040
Edith I. Rudder 020650
Chad P. Miesen 024910
FINISTERRE.0002

*Attorneys for Movant*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | No. 2:18-bk-13576-MCW |
| Barbara K. Berrett, | Chapter 7 Proceedings |
| Debtor. | |
| | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
| Finisterre Homeowners' Association, Inc., | |
| Movant, | *Real Property: 6201 E. Yucca Rd., Paradise Valley, Arizona 85253* |
| v. | |
| Barbara K. Berrett. | |
| Respondent. | |

Movant hereby requests an order granting relief from the automatic stay of 11 U.S.C. §362(a) to permit Finisterre Homeowners' Association, Inc. ("**Movant**") to foreclose the lien arising under the Second Amended And Restated Declaration of Covenants, Conditions and Restrictions for Finisterre on real property owned by Respondent Barbara K. Berrett ("**Respondent**") and to obtain possession and control of the property thereafter by sheriff sale. This motion is supported by the attached Memorandum of Points and Authorities, which is incorporated herein by this reference.

In the event an objection to this Motion is filed by Respondent and the Court is not inclined to grant stay relief, Movant requests that the Court enter an award for adequate protection pursuant to 11 U.S.C. §361.

This Motion is supported by the Attached Memorandum of Points and Authorities, as well as all prior documents filed in this case, including Respondent's petition and schedules, all of which are incorporated herein by this reference.

RESPECTFULLY SUBMITTED this 9th day of May, 2019.

**CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP**

By: _Edith I. Rudder_
Edith I. Rudder
1400E. Southern Ave., Suite 400
Tempe, Arizona 85282
bknotice@carpenterhazlewood.com
*Attorneys for Movant*

## MEMORANDUM OF POINTS AND AUTHORITIES

1.    Respondent Barbara K. Berrett, the Debtor herein, filed a voluntary petition for protection under Chapter 7 of the Bankruptcy Code on November 6, 2018.

2.    Respondent, by virtue of a Deed recorded in the office of the Maricopa County Recorder (attached hereto as Exhibit "A"), is the record owner of certain real property located in Maricopa County, Arizona, known as 6201 N. Yucca Street, Paradise Valley, Arizona (the "**Property**") more particularly described as:

Lot 32, of Finisterre, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 196 of Maps, Page 16.

3.    Respondent is personally obligated to pay assessments, together with interest at 6.5% per annum, late charges, costs and attorneys' fees to Movant with respect to the Property pursuant to Article V, Sections 3 (a) and 3(h) of the Second Amended and Restated Declaration of Covenants, Conditions and Restrictions for Finisterre recorded at 97-0365622 in the Office of the Maricopa County Recorder ("**Declaration**"), which charges also constitute a consensual lien secured by Respondent's Property (the "**Lien**"). A copy of the relevant pages of the Declaration is attached hereto as Exhibit "B". See also A.R.S. §33-1807(A).

4.    The Lien is prior to all other liens, interests and encumbrances, except the lien of a recorded first mortgage or deed of trust or agreement for sale, real estate taxes and other governmental assessments, and liens and encumbrances recorded before the Declaration, according to the Declaration and Arizona law. See A.R.S. §33-1807(B).

5.    According to the records of the Association, Respondent owed $4,085.00 exclusive of interest, at the time of the bankruptcy filing in unpaid assessments and related charges incurred by the Association. The Association incurred additional amounts as a result of the bankruptcy, namely attorneys' fees and costs. A true copy of the account statement for Lot 32 is attached hereto as Exhibit "C".

6.    Because of Respondent's failure to make post-petition assessment payments (currently Two Thousand Sixty-Two and 50/100 Dollars ($2,062.50) semi-annually), additional amounts have accrued since the date of the bankruptcy filing, making the total on the Association account for Respondent related to the Property, $8,383.50, as of this date, plus accrued and accruing interest and accruing assessments, late charges, attorneys' fees and costs,

all of which are secured by the Lien. See Exhibit "B" at Article V, Sections 3 (a) and 3(h). See also A.R.S. § 33-1807(H).

7.    Movant is not adequately protected because Respondent is not making post-petition payments, causing the balance due Movant to grow and putting strain on the nonprofit corporation, and because there may be an inadequate equity cushion.

8.    In addition, Respondent has failed to comply with the provisions of the Declaration, specifically Article II, Section 8 and Article III, Sections 5 and 6, as she has allowed her property to fall into a condition that is untidy, unsightly, and detrimental to other properties in the vicinity. The current violations involve issues with Respondent's failure to properly maintain her landscaping and for moving a dumpster into her circular drive visible to the community, which is itself a violation of Article I, Section 18, Article II, Section 9, and Article III, Section 5 of the Declaration. Movant also seeks relief from the automatic stay in order to clean up Lot 32 and bring it into compliance with the Declaration. Respondent will be responsible for all costs associated with such cleanup.

9.    The Court authorized that the Property should be listed for sale. *See*, Docs ##51 and 52. Neither of the Motions seeking these appointment mention the debt owed to the Association, which, pursuant to A.R.S. §33-1807(B), is senior to any second mortgage on the Property.

10.    Pursuant to L. R. Bankr. P. 4001-1(b), undersigned counsel hereby certifies that: (i) Movant's counsel sent a letter seeking to resolve the issues necessitating the motion to Respondent's counsel and that after sincere effort the parties have been unable to resolve the matter, and (ii) the letter was sent at least seven days prior to the filing of this motion. A true

and correct copy of the letter sent pursuant to L. R. Bankr. P. 4001-1(b) is attached hereto as Exhibit "D".

## LEGAL ANALYSIS

### A.   Jurisdiction

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(G).  The relief sought hereunder by Movant is pursuant to 11 U.S.C. §362.

### B.   Sufficient Cause Exists under 11 U.S.C. §362(d)(1) to Lift Automatic Stay

Automatic stay protection "is one of the fundamental debtor protections provided by the bankruptcy laws." *In re McLouth*, 257 B.R. 316, 319 (Bankr. D. Mont. 2000).  However, a party-in-interest may be granted relief from the automatic stay when a debtor has failed to make post-petition payments. *In re Avila*, 311 B.R. 81, 83 (Bankr. ND. Cal. 2004). *See, also, In re Lexington Racquetball Club, Inc.*, 48 B.R. 103, 104 (Bankr. E.D. Penn. 1986).  In this case, Respondent has failed to make, or failed to timely make, the post-petition payments on the semi-annual assessments since she filed for bankruptcy protection, which also has caused late fees of to be posted to the account for Lot 32.  As a result, a post-petition delinquency of $2,062.50 has accrued against Lot 32.

The Association is a non-profit corporation; its only source of income is the assessments paid to it by the owners.  Without the income from the assessments, the Association would be unable to function.  Very often, it is the owners who do pay their assessments who bear the costs for those who do not. As a result, the Association respectfully requests that this Court lift

the automatic stay on Lot 32 so that it can pursue its remedies in State court, including, but not limited to, pursuing foreclosure of its statutory assessment lien under A.R.S. §33-1256.

## CONCLUSION

Movant requests that the Court enter an order immediately terminating and modifying the automatic stay of 11 U.S.C. §362(a) as to the Debtor/Respondent, the Property, and Movant, to allow Movant in its discretion to foreclose the Lien under the Declaration by judicial foreclosure, or any other method authorized by the Declaration or state law, to conduct a sheriff sale subsequent thereto, to evict Respondent and/or successors of Respondent Barbara K. Berrett, and to obtain ownership, possession and control of the Property described herein. As set forth herein, the stay should be terminated immediately based upon Respondent's failure to make the regular post-petition payments pursuant to the Declaration and her failure to keep her property in compliance with the provisions of the Declaration. A copy of the proposed form of Order is attached hereto as Exhibit "E".

In the alternative, if this Motion is opposed and the Court does not grant it as a result, Movant respectfully requests that the Court, at a preliminary or final hearing, issue such orders, as appropriate, to require Respondent to tender adequate protection payments to Movant in an amount to be set by the Court pursuant to 11 U.S.C. §361. Respondent is not paying anything toward the post-petition monthly assessments on Lot 32 and has amassed a large delinquency post-petition as a result.

Movant further requests, in the event Respondent opposes this Motion, that this Court order Respondent and/or the Trustee to bring the Property into compliance with the

provisions of the Declaration by tending to the landscaping and removing the dumpster from the circular drive.

DATED this 9th day of May, 2019.

CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP

By: _Edith I. Rudder_
Edith I. Rudder
1400E. Southern Ave., Suite 400
Tempe, Arizona 85282
bknotice@carpenterhazlewood.com
Attorneys for Movant

COPY of the foregoing mailed
This 9th day of May, 2019, to:

Barbara K. Berrett
6201 N. Yucca Street
Paradise Valley, AZ 85253
*Debtor*

Grant L. Cartwright
c/o May Potenza Baran & Gillespie, PC
201 N. Central Ave., 22nd Fl.
Phoenix, AZ 85004
*Attorney for Debtor*

Maureen Gaughan
P.O. Box 6729
Chandler, AZ 85246-6729
*Trustee*

/S/ Carolina Murphey

# EXHIBIT A

RECORDING REQUESTED BY
Camelback Title Agency, LLC
AND WHEN RECORDED MAIL TO:

BARBARA K BERRETT

ESCROW NO.: 00010227 - 011 - DCP

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Warranty Deed

For the consideration of Ten Dollars, and other valuable considerations, I or we,

**Alberto Rosenberg and Irene Rosenberg, husband and wife as community property with right of survivorship**

do/does hereby convey to

**Barbara K Berrett, an unmarried woman**

the following real property situated in Maricopa County, ARIZONA:

Lot 32, of FINISTERRE, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded Book 196 of Maps, Page 16.

```
This Deed is signed in counterpart
```

SUBJECT TO: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record. And I or we do warrant the title against all persons whomsoever subject to the matters set forth above.

**SELLERS:**

_____        __Irene Rosenberg_ (signature)_____
Alberto Rosenberg                                    Irene Rosenberg

State of **ARIZONA**                    }ss:
County of **Maricopa**

On _____, before me,
The undersigned
a Notary Public in and for said County and State, personally
appeared **Alberto Rosenberg**
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

FOR NOTARY SEAL OR
STAMP

RESCLPKG

IRENE ROSENBERG *[signature]*

## INDIVIDUAL ACKNOWLEDGMENT

State of Maryland
County of MONTGOMERY } ss

On this the 24th May, 2005, before me, the undersigned officer, personally appeared
Irene Rosenberg

known to me or satisfactorily proven to be the person whose name(s) was subscribed to the within instrument and
acknowledged that it was executed the same for the purpose therein contained.

In witness whereof I hereunto set my hand and official seal.

*[signature]*

Notary Public

My commission expires: 4/30/2008.

# EXHIBIT B



Unofficial
Document

13

WHEN RECORDED, RETURN TO:

Donald E. Dyekman, Esq.
Dyekman, Meda, Curtis & Cohen, P.L.C.
6750 E. Camelback Road
Suite 104
Scottsdale, AZ 85251

0
MARI
HELEN PURCELL
97-0365622     05/30/97     04:39
TONY     1 OF 1

## SECOND
## AMENDED AND RESTATED
## DECLARATION OF COVENANTS, CONDITIONS
## AND RESTRICTIONS
## FOR
## FINISTERRE

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| | | |
| Section 1 | Architectural Committee | 1 |
| Section 2 | Architectural Rules | 2 |
| Section 3 | Areas of Association Responsibility | 2 |
| Section 4 | Association | 2 |
| Section 5 | Board | 2 |
| Section 6 | Declaration | 2 |
| Section 7 | Dwelling | 2 |
| Section 8 | Easement Area | 2 |
| Section 9 | Improvement | 2 |
| Section 10 | Lot | 2 |
| Section 11 | Maintenance Standard | 2 |
| Section 12 | Member | 2 |
| Section 13 | Owner | 2 |
| Section 14 | Plat | 3 |
| Section 15 | Property | 3 |
| Section 16 | Resident | 3 |
| Section 17 | Streets | 3 |
| Section 18 | Visible From Neighboring Property | 3 |
| | | |
| ARTICLE II | USE RESTRICTIONS | 3 |
| | | |
| Section 1 | Residential Use | 3 |
| Section 2 | Animals | 4 |
| Section 3 | Antennas | 4 |
| Section 4 | Utility Service | 4 |
| Section 5 | Architectural Control | 5 |
| Section 6 | Temporary Occupancy | 7 |
| Section 7 | Vehicles and Parking | 7 |
| Section 8 | Nuisances | 8 |
| Section 9 | Trash Containers and Collection | 8 |
| Section 10 | Clothes Drying Facilities | 9 |
| Section 11 | Right of Inspection | 9 |
| Section 12 | Mineral Exploration | 9 |
| Section 13 | Machinery and Equipment | 9 |
| Section 14 | Diseases and Insects | 9 |
| Section 15 | Tennis Courts | 9 |

Unofficial Document

CCR.V6
03/12/97

| | | |
|---|---|---|
| Section 16 | Signs | 10 |
| Section 17 | Roof Mounted Air Conditioning Units | 10 |
| Section 18 | Lights and Reflective Material | 10 |
| Section 19 | Roofs and Flashings | 10 |
| Section 20 | Aluminum Doors and Windows | 10 |
| Section 21 | Restriction on Further Subdivision | 10 |
| Section 22 | Basketball Goals and Backboards | 11 |
| Section 23 | Playground Equipment | 11 |
| | | |
| ARTICLE III | RIGHT-OF-WAY AREAS, EASEMENTS AND MAINTENANCE | 11 |
| | | |
| Section 1 | Right-of-Way Area | 11 |
| Section 2 | Easement for Wall and Landscape Maintenance | 11 |
| Section 3 | Maintenance of "Outside Right-of-Way Area | 12 |
| Section 4 | Areas of Association Responsibility | 12 |
| Section 5 | Lots | 13 |
| Section 6 | Landscaping and Landscaping Maintenance | 13 |
| Section 7 | Maintenance of Outside Perimeter Walls | 13 |
| Section 8 | Assessment of Certain Costs of Maintenance and Repair | 13 |
| Section 9 | Improper Maintenance and Use of Lots | 14 |
| Section 10 | Utility Easements | 14 |
| Section 11 | Additional Maintenance Areas | 14 |
| Section 12 | Easement for Ingress and Egress; Guard Gates | 14 |
| | | |
| ARTICLE IV | ARCHITECTURAL COMMITTEE | 15 |
| | | |
| Section 1 | Membership | 15 |
| Section 2 | Decisions of the Architectural Committee; Approval or Disapproval | 15 |
| Section 3 | Purpose | 15 |
| Section 4 | Variances | 15 |
| Section 5 | Rules and Regulations | 16 |
| Section 6 | Nonliability | 16 |
| | | |
| ARTICLE V | ASSOCIATION; POWERS, MEMBERSHIP AND ASSESSMENTS | 16 |
| | | |
| Section 1 | Organization and Powers of Association | 16 |
| Section 2 | Membership and Voting Rights | 16 |
| Section 3 | Funds and Assessments | 17 |
| Section 4 | Professional Management | 20 |

CCR.V6
03/12/97

| | | |
|---|---|---|
| Section 5 | Dissolution of Association .......................... | 20 |
| Section 6 | Association Rules ................................. | 21 |
| | | |
| ARTICLE VI | GENERAL PROVISIONS ......................... | 21 |
| | | |
| Section 1 | Enforcement ................................... | 21 |
| Section 2 | Severability ................................... | 21 |
| Section 3 | Amendment ................................... | 21 |
| Section 4 | Annexation .................................... | 22 |
| Section 5 | Violations and Nuisances ......................... | 22 |
| Section 6 | Violation of Law ............................... | 22 |
| Section 7 | Remedies Cumulative ........................... | 22 |
| Section 8 | Delivery of Notices and Documents .................. | 22 |
| Section 9 | The Declaration ................................ | 23 |
| Section 10 | Initial Declaration Superseded; Counterparts ........... | 23 |

Unofficial Document

CCR.V6
03/12/97

## SECOND
## AMENDED AND RESTATED
## DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
## FOR FINISTERRE

This Second Amended and Restated Declaration of Covenants, Conditions and Restrictions for Finisterre (this "Declaration") is made as of this _30th_ day of _May_ , 199_7_ , by the persons and entities who have signed this Declaration as evidenced by the signature pages attached hereto (the "Signing Owners").

## RECITALS

A.    An Amended and Restated Declaration of Covenants, Conditions and Restrictions was recorded in Docket 12925, pages 862 through 892, records of Maricopa County, Arizona, imposing certain covenants, conditions and restrictions upon the real property described on Exhibit A attached hereto. The Amended and Restated Declaration of Covenants, Conditions and Restrictions was subsequently amended by the instruments recorded at Recording Nos. 87-441734 and 89-396061, records of Maricopa County, Arizona. The Amended and Restated Declaration of Covenants, Conditions and Restrictions, as previously amended, shall be referred to in this Declaration as the "Initial Declaration".

Unofficial Document

B.    Article VI, Paragraph 32 of the Initial Declaration provides that the Initial Declaration may be amended at any time by an instrument signed by owners representing not less than fifty-one percent (51%) of the lots subject to the Initial Declaration. The Signing Owners are the owners of fifty-one percent (51%) or more of the lots subject to the Initial Declaration, and the Signing Owners desire to amend and restate the Initial Declaration. The Signing Owners intend that this Declaration shall supersede the Initial Declaration in its entirety.

**NOW, THEREFORE,** the Signing Owners amend and restate the Initial Declaration as follows:

## ARTICLE I

## DEFINITIONS

Section 1:    "Architectural Committee" means the committee created pursuant to Article IV hereof.

CCR.V6
03/12/97

Section 2:    "Architectural Rules" means the rules, procedures, design standards and guidelines adopted by the Architectural Committee from time to time.

Section 3:    "Areas of Association Responsibility" means (i) all Streets; and (ii) all land or Improvements located within the boundaries of a Lot which the Association is obligated to maintain, repair and replace pursuant to the terms of this Declaration or the terms of another Recorded document executed by the Association.

Section 4:    "Association" means Finisterre Homeowners Association, Inc., its successors and assigns.

Section 5:    "Board" means the Board of Directors of the Association.

Section 6:    "Declaration" means this Second Amended and Restated Declaration of Covenants, Conditions and Restrictions for Finisterre.

Section 7:    "Dwelling" means a building situated on a Lot that is designed and intended for use and occupancy as a residence.

Section 8:    "Easement Area" means and refers to that portion of the Property so designated in Article III, Section 2 of this Declaration.

Section 9:    "Improvement" means the Dwellings, buildings, fences, walls, hedges, plantings, planted trees and shrubs and any and all structures and landscaping of any type and kind.

Section 10:    "Lot" means each separate parcel of real property designated as a lot on the Plat and, where the context indicates or requires, the Dwelling and all other Improvements situated thereon.

Section 11:    "Maintenance Standard" means the standard of maintenance of Improvements situated on Lots generally prevailing throughout the Project and any standards for the maintenance, repair and replacement of Improvements situated on Lots adopted from time to time by the Board.

Section 12:    "Member" means any Person who is a Member of the Association.

Section 13:    "Owner" means and refers to the record owner, whether one or more persons or entities, of equitable title (or legal title if equitable title has merged) of any Lot. Owner shall not include persons or entities having an interest in a Lot as security for the performance of an obligation, or a lessee or tenant of a Lot.

CCR.V6
03/12/97

2

Section 14: "Plat" means the subdivision plat for Finisterre recorded in Book 196 of Maps, page 16, records of Maricopa County, Arizona, and amendments, supplements and corrections thereto.

Section 15: "Property" means real property described on Exhibit "A" attached to this Declaration together with all Improvements situated thereon.

Section 16: "Resident" means each natural person occupying or residing in a Dwelling.

Section 17: "Streets" means all of the streets shown on the Plat as within the boundaries of Finisterre.

Section 18: "Visible from Neighboring Property" means, with respect to any given object, that such object is or would be visible to a person six feet tall, standing on any part of such neighboring property at an elevation no greater than the elevation of the base of the object being viewed.

## ARTICLE II

## USE RESTRICTIONS

Permitted uses, easements and restrictions for all of the Property covered by this Declaration shall be as follows:

Section 1. **Residential Use.** All of the Property shall be used, improved and devoted exclusively to residential use. No gainful occupation, profession, trade or other nonresidential use shall be conducted on any portion of the Property, except that an Owner or other Resident of a Dwelling may conduct a business activity within a Dwelling so long as: (i) the existence or operation are not detectable by sight, sound or smell from the outside of the Dwelling; (ii) the business activity conforms to all applicable zoning ordinances or requirements for the Property; (iii) the business activity does not involve persons coming on to the Lot or the door-to-door solicitation of Owners or other Residents; and (iv) the business activity is consistent with the residential character of the Property and does not constitute a nuisance or a hazardous or offensive use or threaten the security or safety of other Owners or Residents, as may be determined from time to time in the sole discretion of the Board. The terms "business" and "trade" as used in this Section shall be construed to have ordinary, generally accepted meanings, and shall include, without limitation, any occupation, work or activity undertaken on an ongoing basis which involves the provisions of goods or services to persons other than the provider's family and for which the provider receives a fee, compensation or other form of consideration, regardless of whether: (i) such activity is engaged in fully or part time; (ii) such activity is intended or does generate a profit; or (iii) a license is required for such activity. Nothing herein shall be deemed to prevent the leasing of an entire Lot from time to time by the Owner thereof, subject to all of the provisions of the Declaration. No structure whatever, other than

Case 2:18-bk-13576-MCW    Doc 55    Filed 05/10/19    Entered 05/10/19 13:41:47    Desc
Main Document      Page 18 of 33

Section 5.    **Rules and Regulations.** The Architectural Committee shall have the power to establish such rules and regulations governing its activities and architectural guidelines, standards and procedures to be used in rendering its decisions.

Section 6.    **Nonliability.** Neither the Board nor the Architectural Committee nor any member thereof shall be liable to the Association, to any Owner or to any other party for any damage, loss or prejudice suffered or claimed on account of (a) the approval or disapproval of any plans, drawings or specifications, whether or not defective or deficient, (b) the construction or performance of any work whether or not pursuant to approved plans, drawings and specifications, (c) the development of any portion of the Property or (d) the execution and filing of any estoppel certificate whether or not the facts therein are correct; provided however, that with respect to the liability of a members of the Board of Directors or the Architectural Committee, such member has acted in good faith on the basis of such information as may be possessed by him. Without in any way limiting the generality of the foregoing provisions of this Section 6, the Board or the Architectural Committee or any member thereof may, but is not required to consult with or hear the views of the Association or any Owner with respect to any plans, drawings, specifications or any other proposals submitted to the Board of Directors or the Architectural Committee.

## ARTICLE V

## ASSOCIATION; POWERS, MEMBERSHIP AND ASSESSMENTS
Unofficial Document

Section 1.    **Organization and Powers of Association.**  The Association shall be a nonprofit Arizona corporation which will have all powers prescribed by law and set forth in this Declaration and the Articles of Incorporation and Bylaws of the Association.  The affairs of the Association shall be conducted by the Board and such officers as the Board may elect or appoint in accordance with the Articles of Incorporation and Bylaws of the Association.  Unless this Declaration, the Articles of Incorporation or Bylaws of the Association specifically require the vote or written consent of the Members, approvals or actions to be given or taken by the Association shall be valid if given or taken by the Board.  The Association may exercise any right or power given to the Association expressly by this Declaration or the Articles or Incorporation or Bylaws of the Association or by law and every other right or power expressly by this Declaration or the Articles of Incorporation or and every other right or power expressly given to the Association by this Declaration or the Articles of Incorporation or Bylaws of the Association or by law or reasonably necessary to effectuate any such express power.

Section 2.    **Membership and Voting Rights.**

(a)    Every Owner of a Lot shall be a Member of the Association. Membership shall be appurtenant to and may not be separated from ownership of any Lot. Each Member shall have one (1) vote for each Lot owned. When more than one person holds an interest

Case 2:18-bk-13576-MCW    Doc 55    Filed 05/10/19    Entered 05/10/19 13:41:47    Desc
Main Document    Page 19 of 33

in any Lot, all such persons shall be Members, and the vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one (1) vote be cast with respect to any Lot. The vote for each Lot must be cast as a unit, and fractional votes shall not be allowed. In the event that joint Owners are unable to agree among themselves as to how their vote or votes shall be cast, they shall lose their right to vote on the matter in question. If an Owner or Owners casts a vote representing a certain Lot, it will thereafter be conclusively presumed for all purposes that he or they were acting with the authority and consent of all other Owners of the same Lot. In the event more than one vote is cast for a particular Lot, none of said votes shall be counted as said votes shall be deemed void.

(b)     Each Member shall have such other rights, duties and obligations as set forth in the Articles of Incorporation and the Bylaws of the Association as they may be amended from time to time.

(c)     The Association membership of each Owner of a Lot within the Property shall be appurtenant to the Owner's Lot. The rights and obligations of an Owner and membership in the Association shall not be assigned, transferred, pledged, conveyed or alienated in any way except upon transfer of ownership to the Owner's Lot and then only to the transferee of ownership to such Lot or by intestate succession, testamentary disposition, foreclosure of a mortgage of record, exercise of a power of sale under a deed of trust or such other legal process as is now in effect or as may hereinafter be established under or pursuant to the laws of the State of Arizona. Any attempt to make a prohibited transfer shall be void. Any transfer of ownership to a Lot shall operate to transfer said membership to the new Owner thereof.

Section 3.     **Funds and Assessments.**

(a)     **Creation of the Lien and Personal Obligation of Assessments.** Each Owner of any Lot by acceptance of such deed is deemed to covenant and agree to pay to the Association annual assessments or charges and special assessments for capital improvements. Such assessments shall be established and collected in the manner provided in this Declaration. The annual and special assessments, together with interest, costs and reasonable attorney's fees shall be a charge on the Lot and shall be a continuing lien upon the Lot against which each such assessment is made. Each such assessment together with interest, costs and reasonable attorneys' fees shall also be the personal obligation of the Person who is the Owner of such Lot at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to the successors in title of the person owning the property at the time the assessment fell due, unless expressly assumed by them.

(b)     **Purpose of Assessments.** The assessments levied by the Association shall be used exclusively (i) to promote the health, safety and welfare of the Owners and Residents, (ii) for the improvement, maintenance, repair and replacement of the Areas of Association Responsibility, (iii) to perform and comply with all the obligations of the Association under this

Case 2:18-bk-13576-MCW     Doc 55     Filed 05/10/19     Entered 05/10/19 13:41:47     Desc
                    Main Document      Page 20 of 33

Declaration or the Articles of Incorporation and Bylaws of the Association, (iv) to exercise the powers granted to the Association by this Declaration or the Articles of Incorporation or Bylaws of the Association, and (v) to construct, operate, maintain, repair and replace guardhouses or guard gates at one or more entrances to the Property.

(c)     **Annual Assessments**. In order to provide for the operation and management of the Association and to provide funds for the Association to pay all of its expenses and to perform its duties and obligations, including the establishment of replacement and maintenance reserves, the Board, for each calendar year shall assess against each Lot an annual assessment. If the Board determines during any calendar year that the funds budgeted for that calendar year are, or will, become inadequate to meet all of the Association's expenses for any reason, including, without limitation, nonpayment of assessments by Members, it may increase the annual assessment for that calendar year and the revised annual assessment shall commence on the date designated by the Board. The Board may not increase the annual assessment from one year to the next by an amount in excess of 15% of the annual assessment for the immediately preceding year without the affirmative vote of Members casting more than 50% of the votes cast in person or proxy at a meeting of the Members called for that purpose.

(d)  .....**Special Assessments for Capital Improvements.** In addition to the annual assessments authorized above, the Association may levy, in any assessment year, a special assessment payable in not more than the next succeeding ten (10) years for the purpose of defraying in whole or in part the cost of any construction, reconstruction, repair or replacement of (i) any landscaping or other Improvement upon the Areas of Association Responsibility, and (ii) guardhouses and/or guard gates at one or more entrances to the Property; provided that any such special assessment shall have the consent of Members casting more than fifty percent (50%) of the votes cast in person or by proxy at a meeting of the Members duly called for that purpose.

(e)     **Meetings. Notice and Quorum for Action Authorized Under Sections (c) and (d) Above.** Written notice of any meeting called for the purpose of taking any action authorized under Subsections (c) and (d) above shall be sent to all Members not less than fifteen (15) days nor more than sixty (60) days in advance of the meeting. At the first such meeting called, the presence of Members or proxies entitled to cast more than fifty percent (50%) of all votes in the Association shall constitute a quorum. If the required quorum is not present, another meeting may be called subject to the same notice requirement and the required quorum at the subsequent meeting shall be one-half (1/2) of the required quorum at the preceding meeting. No such subsequent meeting shall be held more than sixty (60) days following the preceding meeting.

(f)     **Uniform Rate of Assessment.** Annual and special assessments must be fixed at a uniform rate for all Lots and may be collected on a monthly, quarterly, semi-annual or annual basis, as determined by the Board of Directors of the Association. The Board of Directors shall determine when an assessment is due and payable and when the payment of an assessment shall be deemed delinquent.

(g)    **Assessment Certificate.** The Association shall, upon demand, and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid.

(h)    **Enforcement of Assessments.** Each assessment levied pursuant to this Declaration shall be a separate, distinct and personal debt and obligation of the Owner or Owners against whom the same is assessed, and shall constitute a lien and charge upon the Lot to which the assessment relates. Each Owner, by acceptance of a deed relating to a Lot or Lots or by acceptance of any other document or instrument conveying an ownership interest therein, whether or not it shall be so expressed in any such deed or other document or instrument, are and shall be deemed to covenant and agree to pay to the Association the assessments, both annual and special, provided for herein, and agree to the enforcement of the assessments in the manner herein specified. In the event the Association employs an attorney or attorneys for collection of any assessment, whether by suit or otherwise, or to enforce compliance with or specific performance of the terms and conditions of this Declaration, or for any other purpose in connection with the breach of this Declaration, each Owner agrees to pay reasonable attorneys' fees, accountants' fees, and costs thereby incurred in addition to any other amounts due from the Owner or any other relief or remedy obtained against said Owner. Except as otherwise provided by law, in the event a default in payment of any such assessment when due, in which case the assessment shall be deemed delinquent, and in addition to any other remedies herein or by law provided, the Association may enforce each such obligation in any manner provided by law or in equity, or without any limitation of the foregoing by either or both of the following procedures:

<span style="font-size:smaller">Unofficial Document</span>

(i)    **Enforcement by Suit.** The Association may bring a suit at law against each Owner or Owners to enforce each such assessment obligation. Each Owner agrees that any judgment rendered in any such action shall include a sum for reasonable attorneys' fees in such amount as the Court may adjudge against the defaulting Owner, plus all court costs and necessary and accounting fees incurred by the Association, plus interest on the amount of said assessment at the rate of interest specified from time to time by the Board from the date the assessment becomes delinquent until paid in full.

(ii)    **Enforcement by Lien.** The Association may give notice to each Lot Owner whose assessment is due and unpaid by mailing to said Owner a copy of a Notice and Claim of Lien which shall state the following: (1) the last known name of the delinquent Owner; (2) the legal description and street address of the Lot against which claim of lien is made; (3) the amount claimed to be due and owing (with any proper offset allowed); (4) that the claim of lien is made by the Association pursuant to the terms of the Declaration; and (5) that a lien is claimed against the Lot in an amount equal to the amount of the stated delinquency. The Association may record a duly executed original or copy of such Notice and Claim of Lien and the lien claimed therein shall immediately attach and become effective as a lien upon the Lot against which such assessment was levied. Each default in payment of an assessment shall constitute a separate basis for a claim of lien or a lien, but any number of defaults may be included within a single Notice and Claim of Lien. The

Case 2:18-bk-13576-MCW    Doc 55    Filed 05/10/19    Entered 05/10/19 13:41:47    Desc
Main Document    Page 22 of 33

amount of the lien shall include the amount of all unpaid assessments, plus interest on the amount of the assessment at the rate of interest specified from time to time by the Board from the date the assessment becomes delinquent until paid in full, plus a lien charge to cover recording, legal and accounting expenses incident thereto. The amount of said lien charge may be increased or decreased by the Board of Directors in its sole discretion. Any such lien may be foreclosed by appropriate action in court, or in the manner provided by law for the foreclosure of a realty mortgage, or the exercise of a power of sale in a trust deed, as elected by the Association, as set forth by the Laws of the State of Arizona, as the same may be changed or amended. The lien provided for herein shall be in favor of the shall be for the benefit of all other Lot Owners. The Association have the power to bid in its interest at any foreclosure sale and to purchase, acquire, hold, lease, mortgage and convey any Lot. In the event such foreclosure is by action in court, reasonable attorneys' fees, court costs, title search fees, interest and all other costs and expenses shall be allowed to the extent permitted by law. Each Owner hereby expressly waives any objection to the enforcement and foreclosure of this lien in this manner and also hereby expressly waives the defense of the statute of limitations applicable to the bringing of any suit or action thereon.

        (iii)   **Notification.** The Association may notify all Owners of the names of all persons who have defaulted in the payment of any assessment when due and the amount thereof in the discretion of the Board.

        (iv)   **Enforcement.** The Town of Paradise Valley, Arizona, shall have the right to enforce its rights under this Declaration in the same manner as the Association.

        (v)   **Subordination of the Lien to Mortgages.** The lien of the assessments provided for herein shall be subordinate to the lien of any first mortgage or trust deed. Sale or transfer of any Lot shall not affect the assessment lien. However, the sale or transfer of any Lot pursuant to mortgage foreclosure, exercise of a power of sale pursuant to a deed of trust, or any proceeding in lieu thereof, shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve a Lot Owner of a Lot from liability for any assessments thereafter becoming due or from the lien thereof.

    Section 4.    **Professional Management.** The Association shall at all times engage the services of a professional manager or a professional management company to act as the managing agent for the Association and to perform such duties and functions as may be determined by the Board.

    Section 5.    **Dissolution of Association.** The Association may be dissolved by the affirmative vote or written consent of the Owners of at least two-thirds of the Lots. Any such dissolution shall be made in compliance with all applicable laws and regulations governing the dissolution of corporations.

Case 2:18-bk-13576-MCW   Doc 55   Filed 05/10/19   Entered 05/10/19 13:41:47   Desc
Main Document   Page 23 of 33

Section 6. **Association Rules.** The Board may adopt, amend and repeal rules and regulations pertaining to: (i) the management, operation and use of the Areas of Association Responsibility including, but not limited to, any recreational facilities situated upon the Areas of Association Responsibility; (ii) standards for the maintenance, repair and replacement of Lots and the Improvements situated thereon; or (iii) restrictions on the use of Lots. In the event of any conflict or inconsistency between the provisions of this Declaration and the Association Rules, the provisions of this Declaration shall prevail. The Association Rules shall be enforceable in the same manner and to the same extent as the covenants, conditions and restrictions set forth in this Declaration.

## ARTICLE VI

## GENERAL PROVISIONS

Section 1. **Enforcement.** The Association, or any Owner, shall have the right to enforce this Declaration in any manner provided for in this Declaration or by law or in equity, including, but not limited to, an action to obtain an injunction to compel removal of any Improvements constructed in violation of this Declaration or to otherwise compel compliance with this Declaration. The failure of the Association or an Owner to take enforcement action with respect to a violation of this Declaration shall not constitute or be deemed a waiver of the right of the Association or any Owner to enforce this Declaration in the future. If any lawsuit is filed by the Association or any Owner to enforce the provisions of this Declaration or in any other manner arising out of this Declaration of the operations of the Association, the prevailing party in such action shall be entitled to recover from the other party all attorney fees incurred by the prevailing party in the action. In addition to any other rights or remedies available to the Association pursuant to this Declaration or at law or in equity, the Board shall have the power to levy reasonable monetary penalties against an Owner for a violation of this Declaration by the Owner, a lessee of the Owner or, by a Resident of the Owner's Lot, provided the Owner is given notice and an opportunity to be heard.

Section 2. **Severability.** Invalidation, illegality or unenforceability of any one of these covenants or restrictions by statute, judgment or court order shall in no way affect any other provisions of this Declaration, which shall remain in full force and effect.

Section 3. **Amendment.** The covenants, conditions, restrictions and easements contained in this Declaration shall run with and bind the Property and be in full force and effect in perpetuity unless terminated in accordance with the requirements of this Section. This Declaration may be terminated at any time if such termination is approved by the affirmative vote or written consent, or any combination thereof, of the Owners of sixty percent (60%) or more of the Lots. If the necessary votes or consents are obtained, the Board shall cause to be recorded with the County Recorder of Maricopa County, Arizona, a certificate of termination, duly signed by the President or Vice President and attested by the Secretary or Assistant Secretary of the Association. Upon the

CCR.V6
03/12/97

Unofficial Document

RECORDING REQUESTED BY
Camelback Title Agency, LLC
AND WHEN RECORDED MAIL TO:

BARBARA K BERRETT

ESCROW NO.: 00010227 - 011 - DCP

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Warranty Deed

For the consideration of Ten Dollars, and other valuable considerations, I or we,

**Alberto Rosenberg and Irene Rosenberg, husband and wife as community property with right of survivorship**

do/does hereby convey to

**Barbara K Berrett, an unmarried woman**

the following real property situated in Maricopa County, ARIZONA:

Lot 32, of FINISTERRE, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded Book 196 of Maps, Page 16.

This Document is signed in counterpart.

SUBJECT TO: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record. And I or we do warrant the title against all persons whomsoever, subject to the matters set forth above.

SELLERS:

_____          _____
Alberto Rosenberg                                              Irene Rosenberg

State of **ARIZONA**                                    }ss:
County of Maricopa

On _June 2, 2005_____, before me,
The undersigned
a Notary Public in and for said County and State, personally
appeared **Alberto Rosenberg**
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal
Signature _____



NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
DEBORAH C. PIHL
My Commission Expires 03/31/09

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
DEBORAH C. PIHL
My Commission Expires 03/31/09

RESCLPKG

# EXHIBIT C

**BARBARA K. BERRETT**
**6201 N YUCCA RD**
**PARADISE VALLEY, AZ 85253**

**Property Address**
**6201 N YUCCA RD**
**PARADISE VALLEY, AZ 85253**

| Posting Date | Posting Code | Description | Notation | Ref # | Amount | Open Amount | Balance |
|---|---|---|---|---|---|---|---|
| 12/31/2017 | PAYMENT | Beginning Balance | | | ($35.00) | $0.00 | ($35.00) |
| 1/1/2018 | ASSESSMENT | January 2018 – Semi-Annual Assessment | | | $1,875.00 | $1,840.00 | $1,840.00 |
| 7/1/2018 | ASSESSMENT | July 2018 – Semi-Annual Assessment | | | $1,875.00 | $1,875.00 | $3,715.00 |
| 1/1/2019 | ASSESSMENT | January 2019 – Semi-Annual Assessment | | | $2,062.50 | $2,062.50 | $5,777.50 |

# EXHIBIT D



# CARPENTER HAZLEWOOD

Carpenter, Hazlewood, Delgado & Bolen, LLP

ATTORNEYS AT LAW

PHOENIX
1400 East Southern Avenue, Suite 400
Tempe, Arizona 85282-5691
T 480-427-2800
F 480-427-2801

**Edith I. Rudder, Esq.**
*Licensed In Arizona*
e-mail: eadie@carpenterhazlewood.com
direct: 480-427-2855

April 10, 2019

*SENT BY FIRST CLASS MAIL*

Grant L. Cartwright
May Potenza Baran & Gillespie, PC
201 N. Central Ave., 22nd Fl.
Phoenix, AZ 85004-0608

Re:     Barbara K. Berrett (Case 2:18-bk-13576-MCW)
        L.R. Bankr. P. 4001-1 Pre-filing Notice
        **Intent to File Motion for Relief from the Automatic Stay**
        Our File No. FINISTERRE.0002

Dear Mr. Cartwright:

Our firm represents Finisterre Homeowners' Association, Inc. (the "Association") in the collection of Association assessments and related charges Barbara K. Berrett owes on her property at 6201 N. Yucca Rd., Paradise, Valley, 85253, with the legal description of Lot 32, of Finisterre, according the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded Book 196 of Maps, Page 16. By this letter, the Association is seeking to resolve the issues that would necessitate a motion for relief from the automatic stay, pursuant to L.R. Bankr. P. 4001-1.

The Association hereby gives your client notice of its intent to move to lift the automatic stay. Unless the unpaid balance due to the Association is paid in full or some other payment arrangement is agreed upon, the Association intends to file a motion for relief from the automatic stay within seven (7) days of the date of this letter so that it may pursue all avenues available to it to collect the monies owed.

**As of the date of this letter, the total due to satisfy the Association's lien and to avoid a motion for relief from the automatic stay is $6,951.50.** Additionally, post-petition assessments of $2,062.50 accrue semi-annually (January and July of each year).

CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP
FINISTERRE.0002
Grant L. Cartwright
May Potenza Baran & Gillespie, PC
April 10, 2019
Page 2

---

In addition, Ms. Berrett has failed to keep her property in compliance with the Declaration, specifically Article II, Section 8 and Article III, Sections 5 and 6, as she has allowed her property to fall into a condition that is untidy, unsightly, and detrimental to other properties in the vicinity. The current violations involve issues with her failure to properly maintain her landscaping and for moving a dumpster into her circular drive visible to the community, which is itself a violation of Article I, Section 18, Article II, Section 9 and Article III, Section 5 of the Declaration. Pursuant to Article III, Section 9 of the Declaration, this letter serves as Ms. Berrett's fourteen (14) day notice to correct these violations. The Association also will seek stay relief in order to enter Lot 32 pursuant to Article III, Section 9 of the Declaration to clean up the Lot. Any costs of such cleanup will be Ms. Berrett's responsibility.

Please contact me at the number listed above or my assistant, Carolina Murphey, at 480.427.2813 on or before April 25, 2019 regarding this matter or we will proceed in our efforts to lift the automatic stay.

Sincerely,

Edith I. Rudder, Esq.
for
CARPENTER, HAZLEWOOD, DELGADO & BOLEN, PLC

EIR/cam
cc:    Board of Directors

# EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:

Barbara K. Berrett,

    Debtor.

_____

Finisterre Homeowners' Association, Inc.,

    Movant,

v.

Barbara K. Berrett,

    Respondent.

No. 2:18-bk-13576-MCW

Chapter 7

**ORDER TERMINATING
AUTOMATIC STAY**

    Movant's Motion for Relief from the Automatic Stay having been duly served upon the Debtor, Debtor's counsel, and the Trustee and Notice of Filing the foregoing motion having been duly served on the same parties and upon any other parties with an interest in the property at issue, and no objection having been received, and good cause appearing therefore,

    IT IS HEREBY ORDERED that all stays and injunctions, including the automatic stays imposed by 11 U.S.C. §362(a) are hereby immediately terminated with respect to that certain real property encumbered by the consensual lien in favor of Movant arising from the Second

Case 2:18-bk-13576-MCW    Doc 55    Filed 05/10/19    Entered 05/10/19 13:41:47    Desc
Main Document    Page 32 of 33

Amended And Restated Declaration of Covenants, Conditions and Restrictions for Finisterre recorded at No. 97-0365622, in the Office of the Maricopa County Recorder, which property is known as 6201 N. Yucca Street, Paradise Valley, Arizona, and is more particularly described as:

> Lot 32, of Finisterre, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 196 of Maps, Page 16.

IT IS FURTHER ORDERED that Movant, Finisterre Homeowners' Association, Inc., is authorized in its discretion, to foreclose its Lien under the Declaration by judicial foreclosure, or any other method authorized by the Declaration or state law, to conduct a sheriff's sale subsequent thereto, to evict Respondent, her successors or assigns and/or her tenant(s), and to obtain ownership, possession and control of Lot 32 described herein.

**SIGNED AND DATED ABOVE.**